IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY LEE MORGAN,

    Petitioner,　　　　　　　　　　No. CIV S-11-3191 GGH P

  vs.

MICHAEL BABCOCK, Warden,　　　　　<u>ORDER</u> &

    Respondent.　　　　　　　　　　<u>FINDINGS AND RECOMMENDATIONS</u>

                               /

<u>Introduction</u>

        Petitioner, a federal prisoner proceeding pro se, has filed an application for a writ of habeas corpus, purportedly pursuant to 28 U.S.C. § 2241. By order, filed on February 27, 2012, petitioner and respondent were directed to file briefs concurrently addressing the jurisdictional basis for which this court may or may not proceed in the instant action. Respondent filed a response timely, whereas petitioner has not responded to the order and the time for doing so has long since expired. After a careful review, the court concludes that the savings clause of 28 U.S.C. § 2255 does not operate to provide a jurisdictional basis for the filing of this action under § 2241 and the court must recommend dismissal.

\\\\\

\\\\\

1

Petition

> In the initial order, the court summarized the petition:
>
> Petitioner sets forth that he was convicted by a jury in 1999, under 18 U.S.C. §§ 2119 and 1201, for which he "was sentenced to a term of 382 months for the kidnapping and 300 months for carjacking." Petition, p. 6.[1] Petitioner states that state statutes cover these crimes.[2] Id. Petitioner evidently bases this petition on the recent Supreme Court ruling, Bond v. United States, ___ U.S.___, 131[ S.] Ct. 2355 (2011), wherein the high court found that a petitioner had standing to challenge her indictment under a federal criminal statute, 18 U.S.C. § 229, prohibiting possession or use of a chemical weapon on grounds that the statute intruded upon powers reserved to the states in violation of the Tenth Amendment. Petitioner attempts to predicate his challenge on an individual right under the Tenth Amendment to challenge the federal statutes under which he was convicted as encroaching on state sovereignty. Id., at 6-56. Petitioner indulges in a putative disquisition on the evolution of criminal laws from pre-revolutionary colonial times and the history of the Ninth and Tenth Amendments. Id. Petitioner cites United States v. Lopez, 514 U.S. 549, 551, 561 n.3. ,564, 115 S. Ct. 1624 (1995), and Jones v. United States, 529 U.S. 848, 858, 120 S. Ct. 1904 (2000), as examples of the Supreme Court's resistance to "federal assumption of plenary police power in areas that traditionally and historically [have] fallen under state or local control." Id., at 47. Petitioner seeks to have his federal conviction vacated with any prosecution left to the state of Nevada (under the laws of which petitioner believes he might have been subject to "a modest sentence") or, alternatively, to have an evidentiary hearing regarding his arguments. Id., at 49, 56.

See Order, filed on Feb. 27, 2012, at 2.

Background & Response

Respondent references the "somewhat convoluted history" of this case.[3]

---

[1] The pagination of the court's electronic docketing system is referenced.

[2] Review of the petition indicates that petitioner is referencing the state of Nevada's criminal laws. Petition, pp. 36, 49, 56.

[3] Respondent states that petitioner was both sentenced to 382 months for the kidnapping charge and 300 months for the charge of carjacking, to run concurrently, and simultaneously received only a 189-month prison term. See respondent's response, pp. 1-3. However, the Ninth Circuit's published decision on petitioner's appeal clarifies that petitioner initially received a 328- [not 382-]month sentence for the kidnapping to run concurrently with the 300-month carjacking sentence; it was his co-defendant who was sentenced to 189 months. See, United States v. Morgan, 238 F.3d 1180, 1185 (9th Cir. 2001).

Respondent's response (hereafter, Rsp.), p. 1.  On petitioner's appeal, the Ninth Circuit provided the following background:

> Defendant Jerry Lee Morgan and his co-defendant, Billy Johnson, met the victim, Frank Klein, at a truck stop in Cheyenne, Wyoming, on a freezing December night in 1998.  Defendant approached Klein and asked him to jump-start Defendant's car. Klein agreed, and Defendant left, saying that he would return with jumper cables. Because it was cold outside, Klein and Johnson waited for Defendant *1184 in Klein's car.  Defendant returned, informed Klein that someone else would bring jumper cables soon, and asked if he could wait in the car with Klein and Johnson. Klein agreed. Once Defendant was inside the car, Johnson produced a large knife and held it to Klein's throat. Defendant told Klein not to do anything stupid or he would be killed.
>
> Defendant removed a license plate from his own car and transferred his luggage from his car to Klein's. Klein was instructed to get on Interstate 80 and drive west. He did so. When Klein had driven a few miles, Defendant told him to pull over. After Klein stopped the car, Defendant and Johnson bound his wrists with duct tape and placed him in the passenger seat and, later, in the back seat. Defendant began driving. Klein heard Defendant and Johnson arguing about what they were going to do. Defendant urged that they should kill Klein.
>
> When the car reached Salt Lake City, Utah, Defendant bound Klein with fresh duct tape and forced him into the trunk. Later, when the car stopped in Carlin, Nevada, Klein complained that he could not feel his hands and legs because of the cold and asked if he could sit in the car. When Johnson left the car to use the restroom, Defendant opened the trunk and beat Klein on the head between 40 and 50 times with a piece of metal pipe, causing him to bleed heavily. Then Defendant closed the trunk. After Johnson returned, Defendant began driving again.
>
> Sometime later, Defendant stopped at a rest area. Again, Johnson left to use the restroom, and again Defendant opened the trunk and beat Klein on the head with a piece of metal pipe. When Johnson returned this time, Defendant pulled Klein's head back and told Johnson to cut him. Johnson made several shallow cuts across Klein's throat and stabbed him in the shoulder.
>
> Defendant and Johnson shut the trunk, returned to the passenger compartment of the car, and drove to an area near Emigrant Pass, Nevada, just off Interstate 80.  They stopped there, and Defendant opened the trunk. Klein pretended to be dead. Defendant and Johnson removed Klein from the trunk, kicked and rolled him down a hill, and covered him with snow, sticks, and brush. Defendant and Johnson drove away.

After waiting for 15 or 20 minutes, Klein dug himself out, crawled back to the highway, and flagged down a passing snowplow. He was taken to a hospital. There, his cuts were stitched and stapled, and he was treated for frostbite. The hospital took x-rays of Klein's chest, neck, and skull, which were negative. However, a subsequent CT scan revealed a fracture of the frontal sinus, in the area of the right eyebrow. Klein was discharged from the hospital three days later.

An all-points bulletin was broadcast to law enforcement agencies in northern Nevada. The next morning, Chris Murphy, Chief of Police of Carlin, Nevada, saw Klein's car at a truck stop in Carlin. He went inside the truck stop and saw Defendant, but did not approach him because he had not received a description of Defendant. According to Murphy, Defendant saw him, watched him intently for a short time, and then left the truck stop.

Johnson was found, questioned, and arrested in the truck stop. Defendant was arrested later that morning in Elko, Nevada.

Defendant and Johnson were indicted on charges of kidnapping and carjacking. Both entered pleas of not guilty. Defendant filed a motion to sever, which became moot when Johnson pleaded guilty and agreed to testify for the government.

At trial, Defendant testified. He claimed that he did not plan the kidnapping, but was forced to participate by Johnson, who had attacked him in his motel room, tied him up, threatened him with a gun, and raped him twice. He also testified that Johnson had threatened Defendant and Klein with a gun on several occasions during the kidnapping and that *1185 Johnson, not Defendant, had beaten Klein. Finally, Defendant denied having seen Police Chief Murphy at the truck stop in Carlin and stated that he had left the truck stop because he was fleeing from Johnson.

Klein, Johnson, Murphy, and other witnesses testified for the prosecution. Their testimony contradicted Defendant's in most respects. For example, Klein testified that Defendant had beaten him, that Defendant had appeared to be in charge, and that he had not seen Johnson with a gun. Johnson testified that he had not had a gun, that he had not attacked or raped Defendant, that it was Defendant who had suggested that they kidnap and carjack Klein, and that only Defendant had beaten Klein. Murphy testified that Defendant had seen him in the truck stop and had watched him intently before leaving.

At the close of the evidence, Defendant requested and received a jury instruction on the defense of coercion. The jury rejected that defense and found Defendant guilty.  In its sentencing memorandum, the government requested a six-level upward adjustment for "permanent or life-threatening bodily injury," and

4

>two-level adjustments for "obstruction of justice," "aggravating role," and "vulnerable victim." The district court held a sentencing hearing. Afterward, the court denied the "vulnerable victim" adjustment but imposed "obstruction of justice" and "aggravating role" adjustments. The court also imposed a four-level adjustment for "serious bodily injury," rather than the six-level adjustment for "permanent or life-threatening bodily injury," which the government had requested.
>
>After imposing those upward adjustments, the court sentenced Defendant to 328 months in prison on the kidnapping charge and 300 months in prison on the carjacking charge, to run concurrently. The court sentenced Johnson to 189 months in prison.
>
>Defendant timely appealed, challenging his conviction and sentence. The government timely cross-appealed with respect to the district court's refusal to impose a six-level adjustment for "permanent or life-threatening bodily injury."

United States v. Morgan, 238 F.3d at 1183-85.

The Ninth Circuit affirmed the district court on March 28, 2001,[4] but the case was remanded for re-sentencing, as respondent observes, with the option of increasing the sentence. Rsp., at 2, citing the attached criminal docket for case # 3:99-cr-00001-RAM-1, docket entry # 80. The remand was based on the government's cross-appeal and was for the limited purpose of allowing the district court to determine if the injuries to the victim were life-threatening, which it was unclear in the record that the district court had considered. United States v. Morgan, 238 F.3d at 1188-89.

Thereafter, the district court re-sentenced petitioner in an amended judgment, dated Sept. 17, 2001, filed on Sept. 19, 2001, to 382 months for count 1 with the 300-month sentence for count 2 to run concurrent with the sentence for count 1. See case # 3:99-cr-00001-RAM-1, dkt. # 92.[5] Petitioner appealed the amended judgment, on September 20, 2001, and, on

---

[4] The appeal decision was filed on January 31, 2012, but the mandate to the district court evidently issued on March 28, 2001, according to the district court docket.

[5] Respondent inaccurately states that petitioner was re-sentenced to 328 months. Petitioner was originally sentenced to 328 months on count 1 and subsequently re-sentenced to 382 months on that count.

May 23, 2002, the amended judgment was affirmed. Rsp., p. 3, 3:99-cr-00001-RAM-1, dkt. # 93, # 102 - # 103. The docket indicates that on October 15, 2003, and on October 21, 2003, petitioner filed a motion to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255[6]; the court ordered petitioner to show cause why the statute of limitations did not bar the motion; when petitioner objected, the court directed the government's response to the § 2255 motion. See Case # 3:99-cr-00001-RAM-1, dkt. # 105 - # 106, #108- #110. Petitioner filed an amended § 2255 motion to vacate on Dec. 22, 2004; the court appointed counsel for petitioner on his § 2255 motion on Feb. 12, 2004; on June 13 [or 14], 2005, evidently petitioner filed a second amended § 2255 motion. Rsp., pp. 3-4, 3:99-cr-00001-RAM-1, dkt. # 111, #120, #122, # 150.

After the government's July 14, 2005, response, petitioner filed his reply brief on Aug. 16, 2005. See, Case no. 3:99-cr-00001-RAM-1, dkt. # 156, # 159. On May 5, 2006, some claims were found to be barred by the statute of limitations. Id., dkt. # 171. On Dec. 15, 2006, the court granted leave for petitioner to conduct a further investigation and to file a third supplemental memorandum regarding his second amended § 2255 motion; dismissal without prejudice of the § 2255 motion was ordered on June 5, 2007, and petitioner's appointed attorney discharged, at petitioner's request. See 3:99-cr-00001-RAM-1, dkt. # 186, # 210. In the interim, while petitioner was represented by counsel, he had filed a number of documents pro se, which were stricken by the court. Rsp., p. 5, dkt. # 193 - # 196, # 198, # 200 (stricken by order at # 201) &  # 204, #205 (stricken by # 209). Following the discharge of his counsel, the court struck a series of documents filed by petitioner pro se in separate orders. Id., see orders at dkt # 217, # 228.

Petitioner then filed a petition for writ of error audito querela, which was treated as a § 2255 motion and denied, after which petitioner appealed. See 3:99-cr-00001-RAM-1, dkt. # 230, # 232. Petitioner's request for a certificate of appealability was denied in both the district

---

[6] It appears that the Oct.15th motion was a motion for leave to amend § 2255 motion, but the court determined that petitioner did not have such a motion on file. Dkt. # 105, # 106.

court and the Ninth Circuit.  See, id., dkt. # 235, # 238.

Prior to the filing of the instant putative § 2241 petition, petitioner filed another purported § 2241 petition in this court, which was transferred by Magistrate Judge Brennan to the District of Nevada on December 13, 2010.  Rsp., p. 5, 3:99-cr-00001-RAM-1, dkt. # 239, # 240, # 241.  The Nevada District Court treated it as a § 2255 motion, denying it on December 15, 2010, and denying petitioner a certificate of appealability.  Id., dkt. # 242.  When petitioner appealed, the Ninth Circuit denied petitioner a certificate of appealability on December 21, 2011.  Id., at 5-6, dkt. # 244, # 247.

Thereafter, petitioner filed the instant motion/petition, by liberal application of the mailbox rule, on November 29, 2011.[7]

*Analysis*

The undersigned set forth the following in the order directing concurrent briefing on the jurisdictional question (to which petitioner, as noted, was unresponsive):

> Generally, a motion pursuant to § 2255 is the appropriate vehicle by which to challenge a conviction.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.), cert. denied, 488 U.S. 982 (1988), citing, inter alia, 28 U.S.C. § 2255.  See also, Lorentsen v. Hood, 223 F.3d 950, 953 (9th Cir. 2000) ("[i]n general, § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention"), citing United States v. Pirro, 104 F.3d 297, 299 (9th Cir. 1997) ("holding that, in general, '[a] federal prisoner authorized to seek relief under section 2255 may not petition for habeas corpus relief pursuant to section 2241").  Importantly, the remedies pursuant to § 2255 are not inadequate simply because the claim would be dismissed under § 2255 for procedural reasons.  Moore v. Reno, 185 F.3d 1054, 1055 (9th Cir. 1999).  Of critical importance here, only a sentencing court has jurisdiction over a § 2255 motion.  28 U.S.C. § 2255; Tripati, 843 F.2d at 1163.[8]  If the petition is construed as a motion under §

---

[7] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities).  Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003)(mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

[8] "Because a section 2255 motion may be brought only in the sentencing court, the Arizona district court, under this approach, correctly dismssed for lack of jurisdiction." Tripati,

2255, only the District of Nevada has jurisdiction.  If the petition is correctly brought under § 2241 (to attack the execution of sentence as opposed to its legality), the district of incarceration, the Eastern District of California, and not the District of Nevada, is the proper place to bring the action.  Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000).

The Ninth Circuit has also held that because of the jurisdictional nature of the § 2255 inquiry, "a court must first determine whether a habeas petition is filed pursuant to § 2241 or § 2255 before proceeding to any other issue."  Id.

Plainly, petitioner is attempting to invalidate his conviction, which is initially, at least, a § 2255 matter.  The real issue becomes whether the § 2255(e) "savings clause" – "unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention" – could come into play, thereby permitting a § 2241 petition to be filed in its place.  If such were permissible, this district, the district where petitioner is incarcerated, would be the proper place to bring the habeas petition.

Applications of the savings clause favorable to a petitioner/movant have been few and far between.  "We have held that a motion meets the escape hatch criteria of § 2255 '"when a petitioner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim.' Stephens, 464 F.3d at 898 (9th Cir.2006) (internal quotation marks omitted)."  Harrison v. Ollison, 519 F.3d 952, 959 (9th Cir. 2008).  In Stephens, jury instructions which became arguably errant after a Supreme Court decision were an insufficient basis for an actual innocence claim.  In Harrison, a clarifying decision by the Supreme Court, arguably favorable to petitioner in the sense that his conduct would not have implicated a federal crime, decided after petitioner had filed several previous § 2255 motions did not satisfy the procedural impediment hurdle because petitioner could have raised the claim regardless of the decision at issue.  But see Alaimalo v. United States, 645 F.3d 1042 (9th Cir. 2011).

It would appear that petitioner has had multiple opportunities to present his Tenth Amendment challenge prior to bringing this petition, nor does he make any claim of actual innocence.  In re Davenport, 147 F.3d 605, 611 (7th Cir. 1998)("[a] federal prisoner should be

---

843 F.2d at 1163.  The Seventh Circuit takes issue with the "jurisdictional nature" of the sentencing court having to hear the § 2255 motion.  Harris v. Warden, 425 F.3d 386, 388 (7th Cir. 2005).  However, the Ninth Circuit has held the matter jurisdictional, and that is the end of the matter for the undersigned.

8

permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion."). As respondent correctly argues, the decision in Bond did not create a new rule of constitutional law that could be applied on collateral review. Rsp., p. 9. Petitioner has not cited any authority to support his claims that the federal carjacking and kidnapping laws are unconstitutional. Moreover, a claim of legal innocence, such as petitioner makes here, does not equate with a claim of actual innocence. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency.'" Bousley v. United States, 523 U.S. 614, 623-24, 118 S. Ct. 1604, 1611 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519 [] (1992); In Sawyer, the Supreme Court noted that in Smith v. Murray, 477 U.S. 527, 106 S. Ct. 2661 (1986), the High Court had "emphasized that the miscarriage of justice exception is concerned with *actual* as compared to *legal* innocence... ." Sawyer v. Whitley, 505 U.S. at 339, 112 S. Ct. at 2519 [emphasis added]. While, as respondent concedes, petitioner has Article III and prudential standing, under the Tenth Amendment, to challenge the federal government's right to bring charges under the federal carjacking and kidnapping laws, he has no present vehicle for doing so because § 2241 is not available to him to do so.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court make a district judge assignment to this case.

IT IS RECOMMENDED that the petition be dismissed for lack of jurisdiction. These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure

\\\\\

to file objections within the specified time may waive the right to appeal the District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 17, 2012

<u>/s/ Gregory G. Hollows</u><br>
UNITED STATES MAGISTRATE JUDGE

GGH:009
morg3191.jn